UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **OKECHUKWU MUMMEE AMADI** | **CIVIL ACTION NO.** |
| **VS.** | **SECTION P** |
| **CRAIG ROBINSON, ET AL.** | **JUDGE TRIMBLE** |
| | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is a *pro se* civil rights complaint filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[1] on or about May 17, 2004, by Okechukwu Mummee Amadi. Plaintiff is an immigration detainee in the custody of the Department of Homeland Security's Bureau of Immigration and Customs Enforcement (DHS/ICE). He is presently being detained at the Federal Detention Center, Oakdale, Louisiana (FDCO). However, when the complaint was filed, he was detained at the Etowah County Detention Center (ECDC), Gadsden, Alabama. He and the other detainees who joined as plaintiffs complained of incidents and conditions at various detention centers in the United States. This initial complaint was filed on May 17, 2004, in the United States District Court for the Northern District of Alabama and assigned that court's docket number 4:04-cv-1251. On August 28, 2006, United States Magistrate Judge Harwell G. Davis, III, authored a Report recommending transfer of plaintiff's complaint to this court. [Doc.# 29]. On September 18, 2006, United States District Judge R. David Proctor adopted the Report and Recommendation and ordered the matter transferred to this court [Doc.# 31-1], and, in due

---

[1] *Bivens* authorizes civil rights suits filed against federal agents or employees.

course, the matter was transferred, received and filed.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** because plaintiff failed to state a claim for which relief might be granted.

### Statement of the Case

The original complaint (filed on or about May 17, 2004) alleged that during the period between January and February, 2004, a number of DHS/ICE detainees were transferred from FDCO to various parish jails in Louisiana. On April 12, 2004, these detainees were transferred to ECDC. The complaint alleged that only those detainees who "challenge[d] their deportation orders or their continued detention" were the subject of these transfers. The complaint also alleged that plaintiff was transferred from FDCO to the Calcasieu Parish Jail (CPJ) in retaliation for his activities complaining about the treatment of immigration detainees. Additionally, the pleading alleged specific complaints concerning the conditions of confinement at the ECDC. The complaint named the following defendants, (1) Craig Robinson, Field Office Director, DHS/ICE; (2) Wes Williamson, Warden of the ECDC; (3) James Hayes, Sheriff of Etowah County, Alabama; (4) Mark John, Field Director, DHS/ICE, Atlanta; and, (5) Dean Hoth, DHS/ICE Supervisor at the ECDC. Plaintiffs requested injunctive relief as well as compensatory and punitive damages in an unspecified sum. [Doc. 1]. On June 15, 2004, the complaints were severed and each plaintiff was directed to file his own complaint and *in forma pauperis* application. [Docs.# 2 and 3].

On September 13, 2004 plaintiff complied with that order and filed his first amended

complaint. [Doc.# 6]. Therein, plaintiff alleged that he was one of twenty-six immigration detainees transferred from FDCO to the CPJ on January 28, 2004. Prior to his transfer, plaintiff was told that his "release clothes" could not be found. Plaintiff transferred from FDCO to CPJ with no clothes, shoes or socks. Plaintiff claimed that because he had neither shoes nor socks when transferred, he suffered an injury – "swelling and paining" under his left foot and inside his left leg. On July 15, 2004, after plaintiff's transfer to the ECDC, he was examined by a physician who ordered an injection for plaintiff's foot and leg problems.

While plaintiff was detained at the CPJ, he and other inmates complained in a letter submitted to the United States Commission on Civil Rights, the Attorney General of the State of Louisiana, the American Civil Liberties Union (ACLU) and Amnesty International about "basic human need, food, communication, basic sanitation, hygiene, medical attention." On March 3, 2004, the ACLU responded by sending plaintiff and his colleagues a questionnaire. Plaintiff answered the questionnaire and on March 9, 2004, he gave it to a corrections officer to mail. On the following day, plaintiff was transferred to the Pine Prairie Correctional Center (PPCC), Pine Prairie, Louisiana. On April 12, 2004, plaintiff was transferred to ECDC.

In the amended complaint, plaintiff asked for injunctions prohibiting "further retaliatory transfers and or administrative disciplinary proceedings and to protect plaintiff from the hostile behavior of its agents, employees, and persons acting in concert with them ." He also prayed for an injunction directing the defendants to provide adequate medical care to plaintiff's injured foot sustained as [a] result of the malicious and sadistic intent of the ICE agents or to allow plaintiff to immediately seek outside medical care with the full expense to be borne by the ICE. He prayed that the defendants be ordered to return plaintiff's lost clothes or, in the alternative to

reimburse plaintiff for their value. Finally, plaintiff requested compensatory and punitive damages for "physical injury, mental anguish and emotional distress, harm to reputation, economic loss, fear, anxiety and humiliation." He named Robinson, DHS/ICE, Hayes, Hoth, and Jons as defendants. [Doc.# 6].

On September 30, 2004, plaintiff filed a series of documents related to his efforts to obtain compensation under the Federal Torts Claim Act for the loss of his "release" clothes at FDCO.[2] [Docs. 8 and 9].

---

[2] In chronological order, the relevant Exhibits are: (1) Notice of receipt of "release clothing" from the FDCO mail room staff dated January 24, 2001 [Doc.# 9, p. 2];

(2) letter from BOP South Regional Office dated March 12, 2004, which acknowledges receipt of plaintiff's claim for lost property [Doc. 9, p. 7];

(3) letter from BOP South Regional Office dated May 18, 2004, which also acknowledged receipt of plaintiff's claim for lost property [Doc.# 9, p. 8];

(4) Certified Mail from BOP South Regional Office dated June 4, 2004, with notation "re-mailed September 21, 2004;" the letter references Administrative Tort Claim No. TRT-SCR-2004-02252 and states in pertinent part, "Your claim has been considered for administrative settlement under the Federal Tort Claim Act ... You claim government liability in the amount of $1,818.95 for loss of property.

... You state that on January 28, 2004, staff at the ... FDC in Oakdale, Louisiana, lost your release clothing. Specifically, you claim to be missing a suit, a shirt, a pair of socks, a pair of shoes, a pair of underwear, a T-shirt, a belt, a jacket, and a travel bag.

An investigation of your claim revealed that staff at FDC Oakdale received and stored a pair of pants, a shirt, a pair of socks, a pair of shoes, a pair of underwear, a T-shirt, a belt, and a jacket on January 24, 2001, which was authorized to be received as release clothing for you. Records reveal the valued amount of the clothing totaled $160.00. On January 28, 2004, staff were unable to locate the release clothing upon your release.

After a thorough review of this matter, we are prepared to offer settlement of your claim in the amount of $120.00, which represents the depreciated value of the missing property. If you wish to accept this offer, please sign, date, and mail the enclosed voucher ...

Please be advised that if you are dissatisfied with this determination of your claim, you are afforded six (6) months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court." [Doc.# 9, pp. 4-5] (Attached to the letter was the voucher referred to in the settlement offer. [Doc.# 9, p. 6].

(5) Letter from plaintiff to BOP South Regional Office dated September 28, 2004, in which plaintiff stated, "I now write to request that you reconsider the amount being offered as settlement in this matter, in light of the fact that the initial amount claim is $1,818.95 being the total monetary value of my lost fresh and brand new items.

On February 2, 2006, Magistrate Judge Davis signed an order directing further amendment of plaintiff's complaint. The Magistrate Judge observed, "on September 13, 2004, the plaintiff filed an amended complaint asserting claims of retaliatory transfer, loss of personal property, and denial of medical care. However, the amended complaint fails to specify which defendants are responsible for the alleged violations. It is also unclear if the plaintiff intends to pursue any of the claims set forth in the original complaint, which he has failed to sign."  The order further directed plaintiff to file another amended complaint in which he "should name as defendants only those persons who violated his constitutional rights. Plaintiff must identify those persons as defendants both in the heading and in Part III of the complaint. Plaintiff should also state clearly how each named defendant violated his constitutional rights, the date(s) on which the incident(s) occurred, and where the incident(s) occurred." [Doc.# 19].

On October 5, 2006, plaintiff filed the second amended complaint as previously directed by the Magistrate Judge.  [Doc. #28].  He again referred to the loss of his "release" clothes on January 28, 2004, at FDCO and his transfer without shoes and socks that caused unspecified injury to both of his feet and legs. Plaintiff prayed for injunctive relief directing the defendants to refrain from further retaliatory transfers and administrative disciplinary proceedings and to

---

I respectfully request the amount of $1,300.00 with depreciation already factored as fair market value and reasonable offer for my lost items ... Additionally, I am requesting ($200.00) as reimbursement for the cost of prosecution of this matter." [Doc.# 8, p. 3].

On November 3, 2006, plaintiff filed additional exhibits related to this FTCA claim. Among these documents was a letter from plaintiff to the "INS District Director" at Oakdale, Louisiana dated February 9, 2004. The letter documents the events of January 28, 2004, concerning the loss of clothing and a demand for either the return of the clothes or reimbursement in the sum of $1818.95. In support of this claims, plaintiff attached a document entitled, "Original prize of my release clothes" which itemized the cost of each item of clothing. Of note, plaintiff valued the suit at $1,000.00, the shirt at $65.00, the shoes at $600.00, the belt at $35.00 and the jacket traveling bag at $100.00. [Doc.# 32-3, pp. 12-14].

otherwise protect plaintiff from "hostile behaviors" of the defendant's agents.  Plaintiff also prayed for the return of his lost "release clothes" or reimbursement in the amount of $3,500 and for compensatory and punitive damages resulting from his foot injury in the amount of $75,000. Finally, plaintiff named "Craig Robinson, . . . a field Director of the DHS/ICE located . . . [in] New Orleans, LA " as his sole defendant. [Doc.# 28, part III].

     As stated above, on August 28, 2006, the United States Magistrate Judge in the Northern District of Alabama recommended that plaintiff's complaint be transferred to this court. This was based on the Magistrate Judge's observations that in plaintiff's second amended complaint [Doc.# 29] plaintiff named a single defendant, Craig Robinson, Field Director for DHS/ICE in New Orleans. The Magistrate Judge further observed that all claims were "related to the plaintiff's transfer from the Federal Detention Center at Oakdale, Louisiana to the Calcasieu Parish Jail  in January of 2004."  [Doc.# 29, p. 2].

     On September 6, 2006, plaintiff submitted a pleading entitled "Plaintiff's Written Objections to the Proposed Findings of Magistrate Judge's Report and Recommendation" which stated, "There is nothing wrong with the Magistrate Judge's Report and Recommendation because this incident occurred at FDC Oakdale, R&D on 01/28/2004." [Doc.# 30].

     On October 5, 2006, the action was transferred to this court. [Doc.# 31]

     On November 3, 2006, petitioner filed a document entitled "Plaintiff's Response to Court's Notice Dated October 25, 2006."   Plaintiff therein stated, "Plaintiff . . . incorporate [sic] in its entirety and by reference . . . the relief sought in his Second Amended Complaint of June 23, 2006 (Doc. #29) as though initially set forth in this petition, wherefore, plaintiff respectfully prays that this case should be settled amicablly [sic] to avoid further litigation." [Doc.# 32-1].

6

Accompanying this "pleading" were a series of exhibits, many of which had previously been filed by plaintiff during the course of this litigation and which have previously been referred to in this Report. [See footnote 2, *supra*].

## Law and Analysis

**1. Frivolity Review**

On January 11, 2005, the United States District Court for the Northern District of Alabama granted plaintiff's motion to proceed *in forma pauperis*. [Doc.# 18]. However, since plaintiff is an immigration detainee, and not a "prisoner", the court did not apply the filing fee provisions of the Prisoner Litigation and Reform Act (PLRA)[3] in granting his motion for leave to proceed *in form pauperis*. See 28 U.S.C. § 1915(a)(2) and (b); *Ojo v. INS*, 106 F.3d 680, 682-83 (5th Cir.1997) (holding that a detainee of the Immigration and Naturalization Service is not a prisoner for purposes of the PLRA filing fee provision); *Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000). This case is nevertheless subject to the screening provisions of § 1915(e)(2)(B). Compare *Politis v. Dyer*, 126 Fed. Appx. 648, 649, 2005 WL 419413 at ** 1, (5th Cir. 2/23/2005)(unpublished); *Kunda v. Gold*, 2006 WL 1506706 (U.S.D.C.– N.D.Tex. May 31, 2006).

Thus, when a complaint in a civil action filed *in forma pauperis* seeks redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to dismiss the case if it determines at any time that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is

---

[3] In fact, United States Magistrate Judge Davis specifically referred to plaintiff's application as a "non-prisoner application to proceed *in forma pauperis*." [Doc.# 18].

immune from such relief. See 28 U.S.C.A. § 1915(e)(2)(B)

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998). Civil Rights plaintiffs must support their claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff's pleadings, especially his "Second Amended Complaint" along with the various exhibits submitted at various times during the course of these proceedings, present the best case which could be presented by plaintiff under the circumstances. Further, as shown above, plaintiff was specifically directed to amend his complaint to "name as defendants only those persons who violated his constitutional rights" and to "state clearly how each named defendant violated his constitutional rights." Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and, that his complaint should therefore be dismissed with prejudice.

**2. Failure to State a Claim**

In his Second Amended Complaint plaintiff asserted two claims for relief: (1) the loss of personal property on January 28, 2004, and (2) injury to his feet and legs occasioned by having

no shoes on January 28, 2004. As shown above, he has named a single defendant, Craig Robinson, who is alleged to be the DHS/ICE Field Director in New Orleans. [Doc.# 28, paragraph III]. Robinson has apparently been named in his supervisory capacity. Under *Bivens,* supervisory officials cannot be held vicariously liable solely on the basis of their employer-employee relationship with an alleged tortfeasor because there is no doctrine of *respondeat superior* in a *Bivens* action. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998), *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 (5th Cir.1993). Rather, a supervisory official may be held liable when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or "if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn*, 150 F.3d at 544. See also *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); See *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff has failed to allege any facts showing that Field Director Robinson was "personally involved" in either of the alleged violations of his civil rights or that he implemented any policies which in themselves were a violation of any such rights. In short, as to the sole defendant named herein, plaintiff has failed to state a claim for which relief may be granted.

### 3. FTCA

Plaintiff's claim for the loss of his "release clothes" by the defendant arguably falls within the ambit of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq*. To the extent that his pleadings, liberally construed, raise such a claim, the claim is also subject to dismissal.

The FTCA is the exclusive remedy for claims sounding in common law tort against the United States, its agencies, and its employees acting within the scope of their employment. 28

U.S.C. § 2679; *F.D.I.C. v. Meyer*, 114 S.Ct. 996 (1994). Specifically, the FTCA is a limited waiver of the sovereign immunity of the United States.[4] *McNeily v. United States,* 6 F.3d 343, 347 (5th Cir.1987); *Williamson v. U.S. Department of Agriculture*, 815 F.2d 368, 373 (5th Cir.1987). The FTCA provides that the United States can be liable in tort for any negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S. C. § 1346(b).

However, the FTCA contains exceptions to the waiver of sovereign immunity which must be strictly construed in favor of the United States. *Jeanmarie v. United States*, 242 F.3d 600, 605 (5th Cir.2001); *Atorie Air v. F.A.A.*, 942 F.2d 954, 958 (5th Cir.1991); 28 U.S.C. § 1346. One exception found at 28 U.S.C. § 2680(c) concerns damage claims resulting from the detention of goods. This section provides, in pertinent part: "The provisions of this chapter and section 1346(b) of this title shall not apply to – (C) Any claim arising on respect of ... the detention of any goods, merchandise, or other property by any ... law enforcement officer..."

The Fifth Circuit has held that § 2680(c) is applicable to all claims arising from the detention of goods and merchandise by any federal law enforcement officer in the performance of his or her lawful duties. *Halverson v. United States*, 972 F.2d 654, 655 (5th Cir.1992), *cert. denied*, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); *Chapa v. United States*

---

[4] The undersigned notes that to the extent that plaintiff should seek to characterize his complaint as arising under the FTCA, he has failed to name the proper defendant for such an action. The proper defendant in an FTCA action is the United States of America, not the federal agency or its employee. *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir.1988). Nevertheless, as explained herein, even if plaintiff had named the proper defendant, his claims would not be cognizable under the FTCA.

*Department of Justice*, 339 F.3d 388 (5th Cir. 2003). Further, the Supreme Court has concluded that the exception applies to the negligent loss or destruction of the property while it is in the possession of law enforcement officers. The language "arising in respect of" is synonymous with "arising out of" and "sweep [s] within the exception all injuries associated in any way with the 'detention' of goods." *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). Thus, to the extent that plaintiff's claims fall within the scope of the FTCA, the section 2680(c) exception appears to be applicable, thereby exempting the United States from liability.

**4. Prayer for Injunction**

In his prayer for relief, plaintiff asks the court to enjoin the defendant "from . . . further retaliatory transfers and or administrative disciplinary proceedings and to protect plaintiff from the hostile behaviors of its agents or employees."

The law is clear that prison officials may not retaliate against an inmate for exercising his right of access to the courts or using the grievance system. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996); *Gibbs v. King,* 779 F.2d 1040, 1046 (5th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); *Gray v. Thompson,* 2002 WL 1544867, *3 (N.D.Tex.,2002). An action motivated by retaliation for the exercise of a constitutional right is actionable even if the complained of action might have been legitimate if taken for a different reason. *Woods v. Smith,* 60 F.3d at 1165. However, since claims of retaliation have the potential to cause a disruption in the discharge of prison officials' duties, the Fifth Circuit cautions that claims of retaliation must be viewed skeptically and scrutinized carefully. *Id.* at 1166. The burden of proof is significant when alleging a retaliation claim. The plaintiff must allege a violation of a specific constitutional right

and must "establish that but for the retaliatory motive the complained of incident --such as the [transfer] as in the case at bar--would not have occurred." *Id.* (Citations omitted.) Mere conclusory allegations of retaliatory motive or intent are not sufficient. The plaintiff must produce direct evidence of retaliatory motivation or "'allege a chronology of events from which retaliation may be plausibly inferred.'" *Id.*, quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

The plaintiff has failed to come forward with evidence of retaliatory motive in support of his request for injunctive relief.

Further, to the extent that plaintiff is seeking to prevent future action by some prison officials, he fails to provide factual information which demonstrates that these persons have plans to act in a specific manner. Thus, his request for relief is based, at least in part, upon speculative future action and not on any identifiable and immediate harm.

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted .

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),**

**shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, February 15, 2007.**

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE